POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (917) 463-1044
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIVER HAIN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CD PROJEKT S.A., ADAM MICHAL KICINSKI, PIOTR MARCIN NIELUBOWICZ, and MICHAŁ NOWAKOWSKI,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff River Hain ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among

1
CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, public filings, wire and press releases published by and regarding CD Projekt S.A. ("CD Projekt" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired CD Projekt securities between January 16, 2020 and December 17, 2020, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the United States ("U.S.") Securities and Exchange Commission ("SEC"), against the Company and certain of its top officials.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

4. Venue is proper in this judicial district pursuant to Section 27 of the Exchange Act (15 U.S.C. §7 8aa) and 28 U.S.C. § 1391(b) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the U.S. mail, interstate telephone communications, and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying Certification, acquired the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7. Defendant CD Projekt is incorporated in Delaware and its head office is located at Building E, ul. Jagiellonska 74, Warsaw 03-301, Poland. CD Projekt's American Depository Receipts ("ADRs") trade on the OTC Pink ("OTC") under the ticker symbol "OTGLY", and its ordinary shares trade on the OTC under the ticker symbol "OTGLF."

8. Defendant Adam Michal Kicinski ("Kicinski") has served as the Company's Joint Executive Officer and President of the Management Board throughout the Class Period.

9. Defendant Piotr Marcin Nielubowicz ("Nielubowicz") has served as the Company's Chief Financial Officer and Vice-President of the Management Board throughout the Class Period.

10. Defendant Michał Nowakowski ("Nowakowski") has served as the Company's vice president of business development and a member of the Management Board throughout the Class Period.

11. Defendants Kicinski, Nielubowicz, and Nowakowski are sometimes referred to herein as the "Individual Defendants."

12. Each of the Individual Defendants: (i) directly participated in the management of the Company; (ii) was directly involved in the day-to-day operations of the Company at the highest levels; (iii) was privy to confidential proprietary information concerning the Company and its business and operations; (iv) was directly or indirectly involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements and information alleged herein; (v) was directly or indirectly involved in the oversight or implementation of the Company's internal controls; (vi) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or (vii) approved or ratified these statements in violation of the federal securities laws.

13. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of

agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

15. CD Projekt and the Individual Defendants are referred to herein, collectively, as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

16. CD Projekt, through its subsidiaries, engages in the development and digital distribution of videogames worldwide. The Company operates through two segments: CD PROJEKT RED and GOG.com. The Company's product portfolio includes The Witcher; The Witcher 2: Assassins of Kings; The Witcher 3: Wild Hunt, Hearts of Stone games, and Blood and Wine; Thronebreaker: The Witcher Tales; Gwent: The Witcher Card game; and Cyberpunk 2077, as well as online multiplayer games.

17. For several years, the Company had been devoting substantially all its resources to the development of Cyberpunk 2077, which the Company described as a "open world, narrative-driven role-playing game." The game was to be released on various platforms, including Sony's Playstation 5 and Microsoft's Xbox Series X and S, Microsoft's Xbox Series One and Sony's Playstation 4 (the "Current-Generation

Consoles"), Windows, and Google's Stadia. The original release date of the game was slated for April 17, 2020.

**Materially False and Misleading Statements Issued During the Class Period**

18. The Class Period begins on January 16, 2020, when CD Projekt released a statement announcing that though Cyberpunk 2077 was "complete and playable", the game's release date would be delayed until September 7, 2020, as the Company "needed more time to finish playtesting, fixing and polishing."

19. On April 8, 2020, the Company published its Annual Report for fiscal year 2019. Accompanying the Annual Report was a Management Board Report, which stated the following concerning Cyberpunk 2077:

> After the close of the reporting period, on 16 January 2020, the Management Board announced that the release date of Cyberpunk 2077 would be pushed back to 17 September 2020. The Board justified this decision by pointing out the need for additional time to fully playtest, bugfix and polish the game, thus ensuring that customers receive a top-quality product.

20. On September 4, 2020 CD Projekt published their financial results for the first half of 2020 via press release. That same day, the Company held a conference call to discuss its results. Therein, Defendant Kicinski stated the following concerning Cyberpunk 2077's release:

> So –yes, we are confirming and, well, actually today we started preparing for the final certification, so we're very close. Of course we'll work on the title till the very end; that's kind of normal. It's a huge game, but as we said – everything is on track and we're planning to launch it on 19 November.

\* \* \*

6
CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

> [T]he current version, which will be released in November, will be playable from the beginning when next-gen consoles are released; you will be able to play the current-gen version on next-gen from day 1.

21. On October 28, 2020, CD Projekt held a conference call. Therein, Defendant Kicinski announced that the release date for Cyberpunk 2077 would be delayed by three weeks to fix issues with the Current-Generation Console versions, stating that "even though the game has been certified on the current gens by both Sony and Microsoft, some very final optimization processes for such a massive and complex game require a bit of additional time." He elaborated that "the game is releasable on the 19th and having those 3 more weeks just gives us more changes to fix this and that –so we feel secure."

22. During the call, when asked about problems with the Current-Generation Console versions, Defendant Nowakowski stated:

> I wouldn't say there is a "problem" because there's nothing wrong with Xbox or PS4 versions –there is optimization to be handled, also because of how we were approaching things from the get-go in terms of development; so –there is no problem with Xbox or PlayStation 4, to be honest.

23. On November 25, 2020, CD Projekt published their financial results for the third quarter of 2020 via press release. With respect to Cyberpunk 2077, the press release stated that "[p]ositive impressions on the part of journalists, and in particular their remarks which underscore the complexity and amazing ambience of Night City make us very happy and confirm the remarkable potential of Cyberpunk."

24. The Company held a conference call to discuss their quarterly results that same day. During the call, Defendant Kicinski, when asked about the state of Cyberpunk

2077, stated "we believe that the game is performing great on every platform." He elaborated the following concerning Cyberpunk 2077's release:

> The game will be launched on PC, Xbox One, PlayStation 4 and Stadia. Just days ago, next-gen consoles were released and our title will run great on Xbox Series X and S, as well as PlayStation 5 from the very beginning, thanks to their backward compatibility. We are excited to be able to bring our game to more players than ever before.

\* \* \*

> In the past few days, we released two trailers presenting gameplay on current and next-gen consoles. The extra time gained by postponing the release is being used to further optimize the game, and we feel that it was the right decision.

\* \* \*

> We still QA the game. We boasted -- but we do it both internally and externally. We used to tour three, I'm not sure, external teams. So, we cooperate with some companies and the game will be tested by the launch date and that's natural part of the process.

25. During the call, when asked about potential bugs, Defendant Kicinksi stated that:

> "So, in terms of bugs, we are all aware of them. Of course, such a big game can't be just bug free. That's the kind of obvious, but we believe that the level will be as low as to let gamers not see them. And fortunately, some bugs extended previous were caused by some general -- I would say general features and many of them are already fixed. So, what gamers will get will be different from what -- and what we viewers will get in this final review is it's better than what previewers, got.

26. The statements contained in ¶¶ 18-25 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining

8

to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Cyberpunk 2077 was virtually unplayable on the current-generation Xbox or Playstation systems due to an enormous number of bugs; (ii) as a result, Sony would remove Cyberpunk 2077 from the Playstation store, and Sony, Microsoft, and the Company would be forced to offer full refunds for the game; (iii) consequently, the Company would suffer reputational and pecuniary harm; and (iv) as a result, Defendants' statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### The Truth Emerges

27.     CD Projekt launched Cyberpunk 2077 on December 10, 2020. Consumers soon discovered that the Current-Generation Console versions of Cyberpunk 2077 were error-laden and difficult to play. *IGN* published a scathing review, stating that the Console versions "fail[] to hit even the lowest bar of technical quality one should expect even when playing on lower-end hardware. [Cyberpunk 2077] performs so poorly that it makes combat, driving, and what is otherwise a master craft of storytelling legitimately difficult to look at."

28.     On December 14, 2020, facing criticisms for delivering an unplayable, bug-ridden product on the Current-Generation Consoles, the Company held a conference call.

During the call, Defendant Kicinski called the Current-Generation Console versions "way below our expectations," and stated the following:

> After 3 delays, we as the Management Board were too focused on releasing the game. ***We underestimated the scale and complexity of the issues, we ignored the signals about the need for additional time to refine the game on the base last-gen consoles.*** It was the wrong approach and against our business philosophy. On top of that, during the campaign, we showed the game mostly on PCs.

29.   During that same call, Defendant Nielubowicz stated "we definitely did not spend enough time looking at that," when referring to issues with the Current-Generation Console versions.

30.   Following the release, the Company's ADR (OTGLY) price fell $6.93 per share, or 25%, over three trading days to close at $20.75 per share on December 14, 2020, damaging investors.  Over that same period, CD Projekt's common share (OTGLF) price fell $21.65 per share, or 20.1%, to close at $86.00 per share on December 14, 2020, damaging investors.

31.   Then, on December 18, 2020, Sony issued a statement via the Playstation website that it would "offer a full refund for all gamers who have purchased Cyberpunk 2077 via PlayStation Store" and "be removing Cyberpunk 2077 from PlayStation Store until further notice."  Microsoft also announced that it would offer refunds for the game.

32.   That same day, the Company stated that Sony's decision to "temporarily suspend" sales of the game came after a discussion with the Company.

33. On this news, CD Projekt's ADR (OTGLY) price fell $3.49 per share, or 15.87%, to close at $18.50 per share on December 18, 2020, damaging investors. CD Projekt's common share (OTGLF) price fell $9.20 per share, or 10.45%, to close at $78.80 per share on December 18, 2020, damaging investors.

34. As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased or otherwise acquired the CD Projekt securities during the Class Period (the "Class") and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

36. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the OTC. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and

other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

39. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants' acts as alleged violated the federal securities laws;

(b) whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(c) whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) whether the Individual Defendants caused the Company to issue false and misleading filings and public statements during the Class Period;

(e) whether Defendants acted knowingly or recklessly in issuing false and misleading filings and public statements during the Class Period;

(f) whether the prices of the Company's securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

(g) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

40. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

41. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b) the omissions and misrepresentations were material;

(c) the Company's securities are traded in efficient markets;

(d) the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e) the Company traded on the OTC, and was covered by multiple analysts;

(f) the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities;

(g) Plaintiff and members of the Class purchased and/or sold the Company's securities between the time Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

(h) Unexpected material news about the Company was rapidly reflected in and incorporated into the price of the Company's securities during the Class Period.

42. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

43. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

# COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. This Count is asserted against all Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

46. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

47. Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon pPaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

48. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

49. The Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

50. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class

Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

51. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

52. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

53. By reason of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and are liable to Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

54. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior

positions, they knew the adverse non-public information regarding the Company's business practices.

56.  As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

57.  Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein.  The Individual Defendants, therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

58.  Each of the Individual Defendants, therefore, acted as a controlling person of the Company.  By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct

complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

59. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: January 14, 2021                    Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (917) 463-1044
jpafiti@pomlaw.com

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS